IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| OAKWOOD ADDITION, LLC, <br> PLAINTIFF, | § <br> § <br> § | |
| V. | § <br> § | CIVIL ACTION NO. 2:26-CV-00119 |
| CITY OF GEORGE WEST, TEXAS, <br> DEFENDANT. | § <br> § <br> § | |

---

**PLAINTIFF'S MOTION TO REMAND**

---

TO THE HON. UNITED STATES DISTRICT JUDGE OF SAID COURT:

**COMES NOW** Plaintiff, OAKWOOD ADDITION, LLC ("**Plaintiff**") and files this Motion to Remand, respectfully showing unto the Court as follows:

## I.    Summary

1.      Remand should be granted because this Court lacks original jurisdiction and thus removal jurisdiction. Jurisdiction is lacking because there is not complete diversity among the parties. City of Geoge West, Texas ("**Defendant**") admits in its Notice of Removal (the "**Notice**") that it is a citizen of Texas. Plaintiff is also a citizen of Texas because its sole member, Gary Powles ("**Mr. Powles**"), is a Texas resident. Without complete diversity, there is no federal jurisdiction.

2.      Moreover,  this court further lacks original jurisdiction because there is no federal question presented on the face of the well-plead Complaint. Plaintiff asserts a violation of its constitutional rights via regulatory taking under the Texas Constitution and Texas state law, not federal law. Without a federal question, there is no federal jurisdiction.

## II.    Procedural Background

3.    On April 10, 2026, Plaintiff initiated this lawsuit against Defendant as Cause No. LCV260021 in the 36th Judicial District Court of Liveoak County, Texas (the "**State Court Lawsuit**"). *See* Exhibit A.

4.    On April 17, 2026. Defendant filed the Notice as well as a Notice of Removal in the State Court Lawsuit. *See* Doc. 1.

## III.    Purported Basis of Removal

5.    The Notice of Removal alleges this Court has original jurisdiction pursuant to 28 U.S.C. § 1441(a) and 28 U.S.C. § 1332(a). But 28 U.S.C. § 1441(a) does not itself grant original jurisdiction, instead it provides a basis for removal jurisdiction, provided the district court first as original jurisdiction.

6.    However, as set forth below, there is not complete diversity among the parties as required by 28 U.S.C. § 1332(a). Furthermore, there is no federal question jurisdiction presented as required by 28 U.S.C. § 1441(a). Therefore, this Court lacks original jurisdiction, and the removal was improper.

## IV.    General Removal Standard

### A.  The First Inquiry: Does the Federal Court Possess Original Jurisdiction?

7.    Removal can be appropriate <u>only</u> if the action is one over which the federal courts possess original jurisdiction. *See Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 D.3d 720, 723 (5th Cir. 2002); *Glascock v. Prime Care Seven, L.L.C.*, 2009 U.S. Dist. LEXIS 77989 * 18 (W.D. Tex 2009), *adopted by* 2009 U.S. Dist. LEXIS 77984 (W.D. Tex. 2009) (Biery, J.). Federal courts are of limited jurisdiction, possessing only that power authorized by the Constitution and statute.

*Kokkonen v. Guardian Life Ins. Co of Am.*, 511 U.S.S 375, 377 (1994); *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995).

8.      Federal courts are <u>presumed</u> to lack subject matter jurisdiction over an action. Id.; *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). The burden of pleading and proving subject-matter jurisdiction rests with the party seeking to invoke the jurisdiction of the federal courts. *See* id.; *Peoples Nat'l Bank v. Comptroller of Currency*, 362 F.3d 333, 336 (5th Cir. 2004); *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998); *Mitchell v. Clinkscales*, 253 Fed. Appx. 339, 340 (5th Cir. 2007); *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008).

## B.  <u>The Second Inquiry: Does the Federal Court Possess Removal Jurisdiction?</u>

9.      The removing party bears the burden of production and proof to show: (1) the existence of federal subject-matter jurisdiction; and (2) that all procedural and statutory requirements for removal have been satisfied. *See Manguno*, 276 F.3d at 723; *Maitra v. Mitsubishi Heavy Indus. Ltd.*, No. SA-010CA-0209-FB, 2002 U.S. Dist. LEXIS 25900 * 15 (W.D. Tex. Mar. 29, 2002) (Biery, J.).

10.     "As the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns[.]" *Ameen v. Merck & Co.*, 226 Fed. Appx. 363, 368 (5th Cir. 2007) (internal quotation omitted). "The right of removal is entirely a creature of statute and a suit commenced in state court must remain there until cause is shown for its transfer under some act of Congress." *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 32 (2002).

11.     The petition as filed in state court controls the inquiry. *Lindsey-Duggan, LLC v. Philadelphia Ins. Cos.*, No. SA-08-CA-736-FB, 2008 U.S. Dist. LEXIS 107748 * 3-4 (W.D. Tex.

Dec. 15, 2008) (Biery, J.). The power to remove an action is evaluated at the time of removal. *Fed. Savs. & Loan Ins. Corp. v. Griffin*, 935 F. 2d 691, 695-96 (5th Cir. 1992).

12.　Removal can be sustained only upon the grounds stated in the notice of removal, and any timely filed supplement thereto. *See, e.g., Astroworld LP v. Jones motor Co.*, No-. 3-07-CV-1901-AH, 2008 U.S. Dist. LEXIS 7569 * 4 (S.D. Tex. Feb. 1, 2008)(collecting cases).

13.　"An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise[.]" *Rio De Janeiro v. Philip Morris, Inc.*, 239 F. 3d 714, 715-16 (5th Cir. 2001) (describing remand order as a "black hole force"), *citing* 28 U.S.C. § 1447(d).

## V.　**Arguments & Authorities**

14.　The Notice of Removal fails, and remand should be granted, because this Court lacks original jurisdiction over this civil action.

15.　Removal can only be appropriate if the federal district court has original jurisdiction. *Gutierrez*, 543 F.3d at 251, citing 28 U.S.C. § 1441(A). For purposes of this analysis: (1) a federal court is presumed to lack jurisdiction; and (2) the burden of proving federal jurisdiction lies with the removing party.

### A.　**Because Plaintiff is an LLC with a sole member who is a citizen of Texas, the Court lacks original jurisdiction under 28 U.S.C. § 1332.**

16.　There must be "complete diversity" among the parties for a federal court to have jurisdiction under 28 U.S.C. § 1332. *See Harvey v. Grey Wolf Drilling CO.*, 542 F.3d 1077, 1079 (5th Cir. 2008). "Complete diversity 'requires that all persons on one side of the controversy be citizens of different states than all the persons on the other side" *Id.* (quoting *Mclaughlin v. Mississippi Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004).

17.　For purposes of diversity jurisdiction, the citizenship of a limited liability company is that of all of its members. *Id.* at 1080.

18.     Plaintiff is a limited liability company formed under the laws of the State of Wyoming. *See* Exhibit B, Declaration of Gary Powles. Therefore, the citizenship of Plaintiff is that of all of its members. *See Harvey*, 542 F.3d at 1080. The sole member of Plaintiff is Mr. Powles and Mr. Powles is a Texas resident. *See* Exhibit B. Therefore, for purposes of the diversity jurisdiction analysis, Mr. Powles, and thus Plaintiff, are citizens of Texas. *See Harvey*, 542 F.3d at 1079.

19.     In the Removal, Defendant admits it is a home rule municipality and political subdivision of the State of Texas. *See* Doc. No 1 at p. 1. Because both Defendant and Plaintiff are citizens of Texas, there is not complete diversity between the parties. This Court thus lacks original jurisdiction under 28 U.S.C. § 1332. *See Harvey*, 542 F.3d at 1079. Therefore, the removal is improper, and this lawsuit should be remanded.

**B.  Because Plaintiff's claims do not arise under the federal law, the Court lacks original jurisdiction under 28 U.S.C. § 1441(a).**

20.     Under the well-pleaded complaint rule, a federal court has original or removal jurisdiction only if a federal question appears on the face of the plaintiff's well-pleaded complaint; generally, there is no federal jurisdiction if the plaintiff properly pleads only state law causes of action. *See Gutierrez*, 543 F.3d 248. Under this rule, a plaintiff is the master of its complaint and may avoid federal jurisdiction by relying exclusively on state law. *See Id*. Accordingly, there is no federal question jurisdiction if the plaintiff properly pleads only state law causes of action. *See Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011). Further, any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand. *See Manguno* 276 F.3d 720, 723 at 540.

21.     Plaintiff asserts that its Texas constitutional rights were violated by refusing to govern its property under rules in effect in 1983 when it was initially platted. Specifically, Plaintiff

asserts that Defendant's actions constitute a compensable regulatory taking and damaging of its property in violation of Article I, Section 17 of the Texas Constitution and applicable Texas law. Plaintiff's claims arise exclusively from State constitutional and statutory provisions governing property rights and vested rights in Texas. ("**Claims**").

22.     Defendant's Notice of Removal improperly attempts to recharacterize Plaintiff's Claims as arising under the United States Constitution. Defendant alleges that Plaintiff asserts that its constitutional rights were violated under the United States Constitution. Defendant is incorrect. While Plaintiff's pleading references the "United States Constitution" one time in its pleading, it is clear Plaintiff does not assert an independent cause of action under federal law. Rather, Plaintiff's inverse condemnation Claims are clearly brought under Article I, Section 17 of the Texas Constitution and Texas law. The mere reference to the "United States Constitution" does not create federal jurisdiction, rather it was solely referenced to reflect the shared analytical framework between federal and Texas takings jurisprudence. Plaintiff has not asserted any claim under federal law, nor has it invoked any right arising under the United States Constitution, despite Defendant's unsupported claims otherwise. Instead, Plaintiff's Claims are expressly and exclusively grounded in Texas state law.

23.     Despite Plaintiff's claims not arising under Federal law, Plaintiff has, in the interest of clarity, amended its Petition to remove the single reference to the "United States Constitution". This amendment does not alter the nature of Plaintiff's Claims, which have always been grounded exclusively in Texas law. Rather, it confirms what was already apparent from the face of the pleading: that no federal question is presented. *See* Exhibit C.  In light of the amended pleading, it is well established that the amended pleading controls for purposes of determining jurisdiction. *See Royan Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, (2025). The amended complaint

becomes the operative one; and in taking the place of what has come before, it can either create or destroy jurisdiction. *Id.* A post removal amendment can divest a federal court of its supplemental jurisdiction because jurisdiction follows from, and only from, the operative pleading. *Id.* When a plaintiff amends her complaint following her suits removal, a federal courts jurisdiction depends on what the new complaint says. *Id.* Once the plaintiff has ditched all claims involving federal questions, the leftover state claims are supplemental to nothing. *Id.* When an amended complaint is filed, the jurisdictional basis for the suit is reviewed anew. Whereas here, the amended pleading contains no federal claims (nor did it ever), there is no basis for either original or supplemental jurisdiction.

24.    Because Plaintiff only pleads state law Claims and there is no federal question on the face of the Plaintiff's well-pleaded complaint, and Plaintiff has amended his pleading to remove the singular reference  to the United States Constitution, thereby clarifying what was already apparent, that no federal claim has been asserted, this Court lacks original jurisdiction under 28 U.S.C. § 1441(a). Therefore, the removal is improper, and this lawsuit should be remanded.

## VI.    Prayer

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that this Court grant this Motion; remand this suit back to the District court for the 36th Judicial District of Liveoak County, and award Plaintiff all such other and further relief, both general and special, at law or in equity, to which Plaintiff may be entitled, including but not limited to the award of just costs and actual expenses, including attorney fees, incurred as a result of the removal pursuant to  28 US.C. §1447(c).[1]

---

[1] Plaintiff reserves its right to seek just costs and fees by post-judgement motions pursuant to the LOCAL RULES.

Respectfully submitted,

**PATEL GAINES, PLLC**
2030 N Loop 1604 W. Suite 200
San Antonio, Texas 78248
www.patelgaines.com
(817) 394-4844 | Telephone
(817) 394-4344 | Facsimile

By: _/s/ Grant M. Gaines_
Grant M. Gaines
Texas State Bar No. 24084183
ggaines@patelgaines.com

**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF CONFERENCE

I hereby certify that a conference was held between me and James McKibben on May 5, 2026, and Mr. McKibben is opposed to this motion at this time.

_/s/ Grant M. Gaines_
Grant M. Gaines

## CERTIFICATE OF SERVICE

I hereby certify that on the date this document was filed with the Clerk of the Court, a true and correct copy of the above and foregoing document was transmitted in accordance with the requirements of the Federal Rules of Civil Procedure, addressed as follows:

_**Via ECF Service**_:
James McKibben
Liza Aguilar Wood
Marshall Gardner
**MCKIBBEN, MARTINEZ & WOOD, L.L.P.**
555 N. Carancahua, Ste. 1100
Corpus Christi, Texas 78401-0841
_**Attorneys For Defendant**_

_/s/ Grant M. Gaines_
Grant M. Gaines

# EXHIBIT A

CAUSE NO. <u>LCV260021</u>

| | | |
|---|---|---|
| OAKWOOD ADDITION, LLC, | § | IN THE DISTRICT COURT |
| PLAINTIFF, | § | |
| | § | Live Oak County - 36th District Court |
| V. | § | |
| | § | ___ JUDICIAL DISTRICT |
| | § | |
| CITY OF GEORGE WEST, TEXAS, | § | |
| DEFENDANT. | § | LIVE OAK COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

**COMES NOW** Plaintiff Oakwood Addition, LLC ("**Oakwood**" or "**Plaintiff**") and files its Original Petition, respectfully showing the Court as follows:

### I. DISCOVERY LEVEL

1.      Pursuant to Tex. R. Civ. P. 190.4, discovery in this case is intended to be conducted under Level 2 of this Rule.

### II. PARTIES & SERVICE

2.      Plaintiff, Oakwood Addition, LLC ("**Oakwood**"), is a foreign Wyoming limited liability company not authorized to do business in Texas.

3.      City of George West, Texas ("**Defendant**" or the "**City**") is an incorporated city in Live Oak County, who may be served with process by serving its City Manager, Darrell Pullin, at 406 Nueces St., George West, Texas 78022.

### III. JURISDICTION AND VENUE

4.      This Court has jurisdiction pursuant to Chapter 245 of the Texas Local Government Code and because Plaintiff requests damages and remedies within the jurisdictional limits of the Court. Plaintiff seeks monetary relief over $1,000,000.00 and non-monetary relief.

E-Filed for Record
3/17/2026 11:26 AM
Live Oak County District Clerk , TX
By: Rebecca Munoz

5.     Venue is proper in Live Oak County, Texas, pursuant to TEX. CIV. PRAC. & REM. CODE § 15.002 (a)(1) because all of substantial part of the events and omissions giving rise to these claims occurred in Live Oak County and pursuant to Chapter 245 of the Texas Local Government Code.

## IV. BACKGROUND AND FACTS

6.     By deed dated and recorded on or around November 10, 2022, Oakwood acquired fee simple title to the real property and improvements: (1) commonly known as Oakwood Addition, George West, Live Oak County, Texas; (2) Lots 1-38 and Lots 1-30, Block 1 and 2, Oakwood Addition all Blocks and Lots, 15.49 Acres Addition, City of George West, Live Oak County, Texas; and/or (3) the subject of that certain General Warranty Deed recorded as Instrument No. 239660 in the records of the Live Oak County, Texas Clerk (the "**Property**"). The Property is a 68-lot single-family residential subdivision.

7.     The Property was originally platted in 1980 and subsequently amended and approved by the City Council in 1983. The corrected plat was recorded on or about January 10, 1983, in the Plat Records of Live Oak County, Texas (the "**Plat**").[1] Pursuant to Chapter 245 of the Texas Local Government Code, once a plat is approved, the project is vested under the ordinances, regulations, and requirements in effect at the time of approval. Accordingly, the Oakwood Addition subdivision constitutes a vested development under Texas law. Oakwood acquired the Property with the intent to continue development of the subdivision consistent with those vested rights in order to place the Property into its highest and best use. On or about May 2023, Oakwood submitted preliminary civil plans to the City seeking approval to proceed with development pursuant to the Plat.

---

1 *See* Exhibit A (the "Plat").

8.      Thereafter, Oakwood began coordinating with the City and the City's contracted engineer regarding the development of the subdivision. Oakwood met with City representatives and provided the information requested by the City concerning the proposed development and the existing subdivision infrastructure so that the project could proceed consistent with the subdivision's vested rights. Oakwood made repeated efforts to obtain direction from the City regarding the requirements necessary for the project to proceed. Oakwood communicated with City staff through email, telephone calls, and in-person meetings seeking guidance on the development of the Property and confirmation that the subdivision would be allowed to proceed under the regulations in effect when the subdivision was approved. Despite these efforts, the City failed to provide clear direction regarding the requirements applicable to the development of the subdivision and repeatedly delayed providing meaningful responses.

9.      On February 20, 2024, Oakwood submitted a full and complete set of civil engineering plans for the development of the subdivision. Despite receiving those plans, the City did not provide substantive feedback for more than six months. Comments regarding the plans were not issued until October 31, 2024, and those comments were minor in nature. Oakwood corrected the comments and submitted revised plans on November 7, 2024. After Oakwood addressed the City's comments, the City's contracted engineer confirmed that the subdivision's water, wastewater, and street designs were acceptable, and that no further technical comments were required. On or about December 20, 2024, the City approved Oakwood's engineering plans without further objection.

10.     Despite approving the engineering plans, the City thereafter delayed and withheld the final approvals and municipal utility connections necessary for Oakwood to proceed with development of the subdivision for months. Moreover, the City refused to allow development of

the subdivision to proceed unless Oakwood agreed to comply with newly and improperly asserted development requirements. Instead of allowing the project to proceed under the standards applicable at the time the subdivision was originally approved in 1983, the City began asserting new requirements and conditions, including modern fire flow standards and demands for off-site infrastructure improvements, that were adopted decades after the subdivision Plat was approved and that were not applicable to the subdivision when it was originally approved.

11.     As a result of the City's delays, the withholding of approvals, the refusal to provide municipal utility connections, and the attempt to impose retroactive development requirements, Oakwood has been unable to proceed with development of the subdivision despite having satisfied the engineering requirements necessary for the project to move forward. The City's actions have prevented Oakwood from developing the Property as contemplated and as lawfully permitted under the approved Plat and Oakwood's vested rights under Chapter 245 of the Texas Local Government Code and have significantly impaired the value and use of the Property. The City's actions have substantially interfered with Oakwood's reasonable investment-backed expectations and have significantly impaired Oakwood's ability to place the Property into its highest and best use.

## V. CAUSES OF ACTION

12.     All conditions precedent to Oakwood's recovery have occurred or have been waived, excused, or otherwise satisfied.  All notices required have been provided, waived, excused, or otherwise satisfied.

13.     Oakwood repeats and incorporates the allegations contained in paragraphs 1-11 herein for all purposes, including in support of each cause of action asserted.

## A. Violation of Chapter 245 of the Texas Local Government Code

14.     The City has violated Oakwood's vested development rights under Chapter 245 of the Texas Local Government Code. The Oakwood Addition subdivision constitutes a vested development project because the subdivision Plat was approved by the City in 1983 and duly recorded in the Plat Records of Live Oak County, Texas. Despite those vested rights, the City has attempted to improperly apply regulations and development requirements enacted decades after the subdivision's approval to Oakwood's development of the Property, including modern fire flow standards, off-site infrastructure requirements, and other development conditions that were not in effect at the time the subdivision Plat was approved and/or which had already been provided in the Plat.

15.     Chapter 245 of the Texas Local Government Code provides that once a project is filed or approved, the project is entitled to proceed under the regulations, ordinances, and development standards in effect at the time the original permit for the project was filed and applies to all subsequent permits necessary for the completion of the project. *See* TEX. LOC. GOV'T CODE §245.002(b), *See also Sheffield Dev. Co., Inc. v. City of Glenn Heights,* 140 S.W.3d 660,671 (Tex. 2004). Under Chapter 245, a municipality may not retroactively apply subsequently adopted regulations to a previously approved development project. *See City of Lorena v. BMTP Holdings, L.P.*, 409 S.W.3d 634, 644 (Tex. 2013). Here, the Property subdivision Plat was approved and recorded in 1983, and Oakwood is continuing the project development initiated under the previously approved Plat. As such, Oakwood is therefore entitled to develop the Property under the ordinances, regulations, permits, services, requirements and associated vested rights that were in effect at that time and that accompany the project. By attempting to impose development requirements enacted decades after the subdivision was approved, the City has unlawfully refused

to recognize Oakwood's vested rights and interfered with Oakwood's vested development rights under Chapter 245.

16.     The City's actions have prevented Oakwood from proceeding with development of the Property as approved and as protected under Chapter 245 of the Texas Local Government Code. Oakwood therefore seeks declaratory and injunctive relief establishing that the Oakwood Addition subdivision is a vested project under Chapter 245 of the Texas Local Government Code and that the City must allow development of the Property under the ordinances, regulations, and requirements that were in effect when the subdivision was originally approved, together with all other relief to which Oakwood may be entitled at law or in equity.

## B.  Inverse Condemnation

17.     The City has engaged in an unconstitutional inverse condemnation of Oakwood's property rights, in that: (1) the City's actions are not a permissible exercise of its police powers and instead constitute an unlawful regulatory taking; and (2) the City's conduct (a) does not substantially advance and is not rationally related to any legitimate governmental interest, (b) has a severe economic impact upon Oakwood, (c) interferes with Oakwood's distinct investment-backed expectations, and (d) is arbitrary and unreasonable. As a result, the City's conduct constitutes a compensable taking and damaging of Oakwood's Property under the United States Constitution, Article I, Section 17 of the Texas Constitution, and applicable Texas law.

18.     The species of inverse condemnation at issue is known as a regulatory taking, which Texas law recognizes when a government entity, acting under the guise of its regulatory authority, imposes restrictions that unreasonably interfere with a property owners right to use and develop its property and instead operate to deprive the owner of the economically viable use of that property. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 929 (Tex. 1998). A regulatory

taking may occur where governmental action has a severe economic impact on the property owner or substantially interferes with the owner's distinct investment-backed expectations. *See Sheffield Dev. Co., Inc. v. City of Glenn Heights,* 140 S.W.3d 660,671 (Tex. 2004). A regulatory taking may also occur when a municipality interferes with the owners right to use and enjoy its property by imposing regulations against a previously approved development under vested right protection. *See City of Lorena v. BMTP Holdings, L.P.,* 409 S.W.3d 634, 644 (Tex. 2013). Here, the City has done precisely that with respect to the Oakwood Addition subdivision. By refusing to recognize Oakwood's vested development rights, withholding approvals, and conditioning the provision of necessary utility services upon compliance with regulations enacted long after the subdivision was approved, the City has effectively prevented Oakwood from developing the Property as lawfully permitted. The City's actions therefore constitute a regulatory taking and inverse condemnation under Texas law.

19.     As a direct and proximate result of the City's actions, Oakwood has been deprived of the economically viable use of the Property and has suffered substantial damages, including delay damages, lost development opportunities, and diminution in the value of the Property. Oakwood is therefore entitled to just compensation in an amount equal to the value the Property would have had absent the City's interference, together with all other damages allowed by law.

20.     The City has no immunity for violations of the Texas constitution. *See, e.g., City of Beaumont v. Bouillion,* 896 S.W.2d 143, 149 (Tex. 1995). Therefore, the trial court has jurisdiction over these claims. Plaintiff seeks recovery of actual damages, attorney fees, court costs, and pre- and post-judgment interest.

## VI. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that the Court enter a judgment awarding Plaintiff all relief requested herein or available under these facts as well as all such other and further relief, both general and special, at law or in equity, to which it may be entitled, including but not limited to costs, attorney fees, and interest.

Respectfully submitted,

PATEL GAINES, PLLC
2030 N Loop 1604 W, Suite 200
San Antonio, Texas 78248
www.patelgaines.com
(210) 460-7787 | Telephone
(210) 460-7797 | Facsimile

By: /s/ Grant M. Gaines
Grant M. Gaines
Texas State Bar No. 24074241
ggaines@patelgaines.com

ATTORNEY FOR PLAINTIFF

# EXHIBIT A



# CORRECTED PLAT

## OF

## A SUBDIVISION OF

# OAKWOOD ADDITION

## TO THE
## CITY OF GEORGE WEST

### OUT OF THE
### CAMERON COUNTY SCHOOL LAND SURVEY A-145
### JUAN GIMINEZ SURVEY A-192
### AND
### JOSE DE JESUS RODRIGUEZ SURVEY A-412
### LIVE OAK COUNTY, TEXAS

LOCATION MAP

Scale: 1" = 50'

**CURVE DATA**

| | | |
|---|---|---|
| ① | ∠ = 90°00'00" | |
| | R = 10.00' | |
| | T = 10.00' | |
| | L = 15.71' | |
| ② | ∠ = 90°25'12" | |
| | R = 10.00' | |
| | T = 10.07' | |
| | L = 15.78' | |
| ③ | ∠ = 89°34'48" | |
| | R = 10.00' | |
| | T = 9.93' | |
| | L = 15.63' | |
| ④ | ∠ = 52°01'12" | |
| | R = 15.00' | |
| | T = 7.32' | |
| | L = 13.62' | |
| ⑤ | ∠ = 22°01'12" | |
| | R = 50.00' | |
| | T = 9.73' | |
| | L = 19.22' | |
| ⑥ | ∠ = 63°49'59" | |
| | R = 50.00' | |
| | T = 31.14' | |
| | L = 55.70' | |
| ⑦ | ∠ = 44°21'14" | |
| | R = 50.00' | |
| | T = 20.38' | |
| | L = 38.71' | |

STATE OF TEXAS
COUNTY OF BEE

I, George E. Harris, Registered Public Surveyor, do hereby certify that the foregoing subdivision plat truely and accurately represents a survey and subdivision made upon the ground under my direction and that corners were set as indicated thereon.

George E. Harris
Registered Public Surveyor
No. 826

STATE OF TEXAS
COUNTY OF EL PASO

We, Conquistador Construction Co., Inc., do hereby certify that we are the owners of all the land embraced within the boundaries of the foregoing plat; subject to a lien in favor of Commercial National Bank in Beeville, Bee County, Texas, that all easements are hereby dedicated to the public for installation and operation of public utilites; that all street and drainage right of ways are hereby dedicated to public use; and that this plat is being made for the purpose of description and dedication.

This the _____ day of _____, 1982.

Stanley O. Kingery

STATE OF TEXAS
COUNTY OF EL PASO

Before me, the undersigned authority, on this day personally appeared Stanley O. Kingery, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed same for the purpose and considerations herein expressed.

Witness my hand and seal this the _____ day of _____, 1982.

Notary Public

STATE OF TEXAS
COUNTY OF BEE

We, Commercial National Bank in Beeville, Bee County, Texas, do hereby certify that we are the holders of a lien on the lands herein described, and approve the subdivision and dedication for the purposes expressed therein.

This the _____ day of _____, 1981.

Commercial National Bank
Beeville, Texas

STATE OF TEXAS
COUNTY OF BEE

Before me, the undersigned authority, on this day personally appeared _____ of Commercial National Bank in Beeville, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed same for the purpose and considerations herein expressed.

Witness my hand and seal this the _____ day of _____, 1981.

Notary Public

STATE OF TEXAS
COUNTY OF LIVE OAK

This plat of Oakwood Addition approved, _____, by the City Planning Commission of the City of George West, Texas.

This the _____ day of _____, 1982.

Chairman

STATE OF TEXAS
COUNTY OF LIVE OAK

I, _____, Clerk of the Commissioners Court of Live Oak County, Texas do hereby certify that the foregoing map was approved by said Commissioners Court on the _____ day of _____, 1982. As shown by order of record in minutes of said court, in Volume ____, Page ____.

Witness my hand and seal of said court, at the office in George West, Texas.

This the _____ day of _____, 1982.

Clerk of Commissioners Court
Live Oak County, Texas

File No. _____
Filed for record at _____ o'clock ___ m.
_____, 1982.

County Clerk of Live Oak County, Texas

NOTE: REPLACES PLAT RECORDED VOLUME 3, PAGE 74

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Grant Gaines on behalf of Grant Gaines
Bar No. 24074241
ggaines@patelgaines.com
Envelope ID: 112510965
Filing Code Description: Petition
Filing Description: Plaintiff's Original Petition
Status as of 3/17/2026 11:37 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jenna Oulela | | joulela@patelgaines.com | 3/17/2026 11:26:37 AM | SENT |
| Sofia Penaloza | | spenaloza@patelgaines.com | 3/17/2026 11:26:37 AM | SENT |
| Grant MGaines | | ggaines@patelgaines.com | 3/17/2026 11:26:37 AM | SENT |

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

OAKWOOD ADDITION, LLC,        §
    PLAINTIFF,              §
                      §
V.                            §        CIVIL ACTION NO. 2:26-CV-119
                      §
CITY OF GEORGE WEST, TEXAS,   §
    DEFENDANT.              §

## DECLARATION OF GARY POWLES

I, Gary Powles, hereby declare pursuant to 28 U.S.C. § 1746 as follows:

1. My name is Gary Powles. I am more than twenty-one (21) years of age, of sound mind, and capable of making this declaration. The facts, statements, and circumstances set forth in this declaration are based on my personal knowledge and are true and correct.

2. I am the sole member and 100% owner of Oakwood Addition, LLC ("**Oakwood**"), the plaintiff in this action, and authorized to make this declaration on its behalf. Oakwood is a limited liability company that was originally formed under the laws of the State of Wyoming and that continues to exist as a Wyoming limited liability company.

3. Attached hereto as Exhibit B-1 is a true and correct copy of the Certificate of Organization that was signed and filed with the appropriate regulatory bodies in the State of Wyoming on or about October 3, 2022.

4. Attached hereto as Exhibit B-2 is a true and correct copy of the resignation of organizer for Oakwood. Exhibit B-2 accurately reflects that the ownership and membership of Oakwood was transferred to me, and that I am the 100% owner (and sole member) of Oakwood.

5. Attached hereto as Exhibit B-3 is a true and correct copy of the operative pages of the Company Agreement for Oakwood showing the ownership. Exhibit B-3 accurately reflects that I am the 100% owner (and sole member) of Oakwood.

6. I am a custodian of records for Oakwood. Exhibits B-1, B-2, and B-3 were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters. Exhibits B-1, B-2, and B-3 are kept in the course of the regularly conducted activities of

Oakwood and were made by this regularly conducted activity as a regular practice.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED IN THE STATE OF TEXAS, ON THE _6th_ DAY OF MAY, 2026.

Garry Powles

# EXHIBIT B-1

**Wyoming Secretary of State**

Herschler Bldg East, Ste.100 & 101

Cheyenne, WY 82002-0020
Ph. 307-777-7311

For Office Use Only

**WY Secretary of State**
**FILED: Oct  3 2022  9:19AM**
**Original ID: 2022-001167173**

# Limited Liability Company
# Articles of Organization

**I.   The name of the limited liability company is:**

Oakwood Addition LLC

**II.   The name and physical address of the registered agent of the limited liability company is:**

Cloud Peak Law, LLC
1095 Sugar View Dr Ste 500
Sheridan, WY 82801

**III.   The mailing address of the limited liability company is:**

1309 Coffeen Avenue  STE 6663
Sheridan, Wyoming 82801

**IV.   The principal office address of the limited liability company is:**

1309 Coffeen Avenue  STE 6663
Sheridan, Wyoming 82801

**V.   The organizer of the limited liability company is:**

Andrew Pierce
1095 Sugar View Dr STE 500, Sheridan, Wyoming, 82801

| Signature: | *Andrew Pierce* | Date: | **10/03/2022** |
|---|---|---|---|

Print Name:   **Andrew Pierce**

Title:   **Authorized Individual**

Email:   **reports@cloudpeaklaw.com**

Daytime Phone #:   **(307) 683-0983**



**Secretary of State**

**Wyoming Secretary of State**

Herschler Bldg East, Ste.100 & 101

Cheyenne, WY 82002-0020
Ph. 307-777-7311

---

☑ I am the person whose signature appears on the filing; that I am authorized to file these documents on behalf of the business entity to which they pertain; and that the information I am submitting is true and correct to the best of my knowledge.

☑ I am filing in accordance with the provisions of the Wyoming Limited Liability Company Act, (W.S. 17-29-101 through 17-29-1105) and Registered Offices and Agents Act (W.S. 17-28-101 through 17-28-111).

☑ I understand that the information submitted electronically by me will be used to generate Articles of Organization that will be filed with the Wyoming Secretary of State.

☑ I intend and agree that the electronic submission of the information set forth herein constitutes my signature for this filing.

☑ I have conducted the appropriate name searches to ensure compliance with W.S. 17-16-401.

☑ I consent on behalf of the business entity to accept electronic service of process at the email address provided with Article IV, Principal Office Address, under the circumstances specified in W.S. 17-28-104(e).

**Notice Regarding False Filings: Filing a false document could result in criminal penalty and prosecution pursuant to W.S. 6-5-308.**

> **W.S. 6-5-308. Penalty for filing false document.**
>
> (a) A person commits a felony punishable by imprisonment for not more than two (2) years, a fine of not more than two thousand dollars ($2,000.00), or both, if he files with the secretary of state and willfully or knowingly:
>
> (i) Falsifies, conceals or covers up by any trick, scheme or device a material fact;
>
> (ii) Makes any materially false, fictitious or fraudulent statement or representation; or
>
> (iii) Makes or uses any false writing or document knowing the same to contain any materially false, fictitious or fraudulent statement or entry.

☑ I acknowledge having read W.S. 6-5-308.

**Filer is:**    ☐ An Individual    ☑ An Organization

The Wyoming Secretary of State requires a natural person to sign on behalf of a business entity acting as an incorporator, organizer, or partner. The following individual is signing on behalf of all Organizers, Incorporators, or Partners.

**Filer Information:**
**By submitting this form I agree and accept this electronic filing as legal submission of my Articles of Organization.**

Signature:    *Andrew Pierce*                              Date:  **10/03/2022**

Print Name:    **Andrew Pierce**

Title:    **Authorized Individual**

Email:    **reports@cloudpeaklaw.com**

Daytime Phone #:    **(307) 683-0983**



**Secretary of State**

## Consent to Appointment by Registered Agent

**Cloud Peak Law, LLC**, whose registered office is located at **1095 Sugar View Dr Ste 500, Sheridan, WY 82801**, voluntarily consented to serve as the registered agent for **Oakwood Addition LLC** and has certified they are in compliance with the requirements of W.S. 17-28-101 through W.S. 17-28-111.

I have obtained a signed and dated statement by the registered agent in which they voluntarily consent to appointment for this entity.

Signature:  *Andrew Pierce*                      Date:  **10/03/2022**

Print Name:  **Andrew Pierce**

Title:  **Authorized Individual**

Email:  **reports@cloudpeaklaw.com**

Daytime Phone #:  **(307) 683-0983**

# STATE OF WYOMING
## Office of the Secretary of State

I, KAREN L. WHEELER, Deputy Secretary of State of the State of Wyoming, do hereby certify that the filing requirements for the issuance of this certificate have been fulfilled.

CERTIFICATE OF ORGANIZATION

**Oakwood Addition LLC**

I have affixed hereto the Great Seal of the State of Wyoming and duly executed this official certificate at Cheyenne, Wyoming on this **3rd** day of **October**, **2022** at **9:19 AM.**

Remainder intentionally left blank.



Filed Date: 10/03/2022

Deputy Secretary of State

Filed Online By:

Andrew Pierce

on 10/03/2022

# EXHIBIT B-2



## CLOUD PEAK LAW, LLC

Resignation of Organizer

for

**Oakwood Addition LLC**

The undersigned, being the Organizer of **Oakwood Addition LLC**, herein the "Company", a limited liability company in the state of Wyoming, does hereby adopt the following resolutions and takes the following action by written consent in lieu of a meeting.

**RESOLVED,** that from this day hence, the undersigned has fulfilled the duties of Organizer and relinquishes all further duties to the Members of the Company; and

**RESOLVED,** that simultaneous with the Organizer's transfer of all further duties to the Members, the said Organizer resigns such office effective this date; and

**RESOLVED,** that the following named persons shall constitute the initial Members of **Oakwood Addition LLC:**

Garry H  Powles

X _____

*Signed and executed by Andrew Pierce, the Organizer, on 10/3/2022.*

1095 Sugar View Dr STE 500
Sheridan, Wyoming 82801
Phone 307-683-0983

info@CloudPeakLaw.com • www.wyomingllcattorney.com

# EXHIBIT B-3

## OPERATING AGREEMENT

### Oakwood Addition LLC
### (a Wyoming Limited Liability Company)
### (Organized under the Wyoming Limited Liability Company Act)

### ARTICLE I
### INITIAL DATE AND PARTIES; AUTHORIZATION

**Section 1.01. Initial Date and Parties.** This Agreement became effective the date articles of organization were filed with the Wyoming Secretary of State and is between the Company and its Member.

**Section 1.02. Authorization for this Agreement.** This Agreement is made under the LLC Act.

### ARTICLE II
### DEFINITIONS

Unless the language or context clearly indicates otherwise, the following definitions apply:

- **Act of Members** mean decisions undertaken by the Members holding a majority Membership Interest Percentage, unless a different percentage is otherwise specified in this Agreement. These may occur at a meeting or by written consent.
- **Agreement** means this agreement and the articles of organization, as amended from time to time.
- **Assignee** has the meaning set forth in Section 5.05.
- **Capital Account** means the account of the Member set forth in Article V.
- **Charging Order Holder** has the meaning set forth in Section 5.02.
- **Code** means the Internal Revenue Code, as amended.
- **Company** means this LLC, a Limited Liability Company organized under the LLC Act.
- **Default Rule** means a rule in the LLC Act which: (i) structures, defines, or regulates the finances, governance, operations or other aspects of a limited liability company under the LLC Act, and (ii) applies except to the extent it is negated or modified by the Agreement.
- **Fiscal Year** means calendar year.
- **LLC Act** means the Wyoming Limited Liability Company Act.
- **Manager** means the person or persons specified in Article VI.
- **Member** means a person with ownership interest in the Company.
- **Membership Interest** and **Percentage** have the meanings set forth in Article V.
- **Net Losses** and **Net Profits** mean net losses and profits of the Company computed in accordance with the customary methods of accounting consistently applied from prior periods and shall be allocated and distributed according to Membership Interest Percentage.
- **Net Operating Cash Flow** means all cash received by the Company from operations, including, but limited to, rents fees and reimbursements and proceeds from sales, financings or re-financings, all as decreased by all cash expenditures for operations, including, but not limited to, expenditures for principal and interest on indebtedness, taxes, insurance, management fees, commissions, reasonable reserves, repairs, maintenance, landscaping, renovation and capital improvements.
- **Officer** has the meaning set forth in Section 6.06.
- **Required Records** have the meaning set forth in Article IX.

- **Substitute Member** has the meaning set forth in Section 5.03.

## ARTICLE III
## BACKGROUND OF THIS AGREEMENT

**Section 3.01. History and Nature of the Company.** The Company was organized in Wyoming and is authorized to engage in any legal act. The Company's principal place of business is set forth in its articles of organization and may only be changed by an Act of the Member.

**Section 3.02. Powers.** The Company has all powers granted under the laws of Wyoming.

**Section 3.03. Registered Agent and Office.** The Company's initial registered agent and its office are specified in the articles of organization. The registered agent may only be changed by an Act of Members.

**Section 3.04. Term.** The Company commenced existence on the date its articles of organization were endorsed by the Wyoming Secretary of State and shall exist in perpetuity unless sooner terminated as provided in Article X.

## ARTICLE IV
## RELATIONSHIP OF AGREEMENT TO DEFAULT RULES AND ARTICLES

**Section 4.01. Relationship of Agreement to LLC Act Default Rules.** Regardless of whether this Agreement specifically refers to a Default Rule:

- If any provision of this Agreement conflicts with a Default Rule, the provisions of this Agreement control and the Default Rule is modified or negated accordingly; and
- If it is necessary to construe a Default Rule as modified or negated in order to effectuate any provision of this Agreement, the Default Rule is modified or negated accordingly.

**Section 4.02. Relationship between Agreement and Articles of Organization.** If a provision of this Agreement differs from a provision of the articles of organization, this Agreement governs to the extent the law allows.

## ARTICLE V
## CAPITAL STRUCTURE; MEMBERSHIP INTEREST AND PERCENTAGE

**Section 5.01.** Ownership rights in the Company are reflected in the Membership Interests and Percentages stated in the Capital Account maintained in the Required Records. As of the date of this Agreement, there is a single Member, who is as follows:

| Member | Contribution | Membership Interest Percentage |
|---|---|---|
| Garry H Powles | | |

*Total: 100%*

The Company shall not issue Membership certificates but shall at the request of the Member provide a statement setting forth the Membership Interest Percentage owned and any effective transfers.

**Section 5.02. Creditor Rights.** If a court enters a charging order against a Member, a Substitute Member, or an Assignee, then the judgment creditor shall be referred to as the "*Charging Order*

*Holder.*" Pursuant to W.S. 17-15-145, the charging order is the exclusive remedy by which a Charging Order Holder may obtain any satisfaction from the Company.

The Charging Order Holder has only those rights specified in the foregoing statute and nothing in this Agreement shall be construed to provide otherwise. This Section does not deprive any Member, Substitute Member, or Assignee of rights under any available exemption laws. A Charging Order Holder has no rights of a Member.

**Section 5.03. Admission of Additional Members by Consent.** No Person shall be admitted to the Company as an additional Member without the unanimous consent of the Members. The Members have no obligation to consent. The admission of an additional Member will have the effect of reducing the proportional Membership Interest Percentage of the existing Member or Members and increasing the Membership Interest Percentage of the admitted Member or Members.

- Admission Requirements. Notwithstanding the provisions of the foregoing section, no Person shall be admitted as a Member until that Person has:
- paid all expenses connected with admission;
- agreed to be bound by this Agreement;
- provided evidence satisfactory to the [Members or Manager] in its sole and absolute discretion, that admission will not:
  - violate applicable securities law,
  - cause a termination of the Company under the Code or the LLC Act;
  - change the tax status of the Company; and
  - damage or diminish the value of the Company's property.

A violation of this Article in any respect shall make the admission of any Person as a Member null and void and of no force and effect; however, on full satisfaction of the aforementioned requirements, the proposed admittee shall be deemed a "*Substitute Member*."

**Section 5.04. Restrictions on Transfer.** To the fullest extent permitted by law, any transfer of, or creation or existence of a lien on, whether voluntary or involuntary, or by operation of law, any Membership Interest or portion thereof, or any beneficial interest in a Membership Interest, which affects the record of beneficial ownership in possession of any Membership Interest is null and void without the unanimous consent of the Members. The Members have no obligation to consent. Any transfer in violation of the provisions of this Article makes the proposed transferee an Assignee.

**Section 5.05. Assignee Interest Transferred.** The Person to whom a Membership Interest is sought to be conveyed by a Member shall be an "*Assignee*" until such time, if ever, as that Person satisfies in full the requirements of this Article and becomes a Substitute Member. Until such time as an Assignee is admitted as a Substitute Member, the Assignee shall have only those rights set forth in this Section.

A Transfer from a Member to another Person shall become effective on the date all conditions set forth in this Article are completed in full. Until an Assignee is admitted as a Substitute Member, the Company and the Members may treat the assignor of the transferred Membership Interest as the absolute owner of the transferred Membership Interest except with respect to Member distributions.

Until an Assignee is admitted as a Substitute Member the Assignee shall be entitled to receive any distributions from the Company the transferring Member would have been entitled to receive with respect to the Membership Interest had the transferring Member retained the Membership Interest.

However, an Assignee has substantially fewer rights than a Member. Members have full access to Company records and information, while Assignees have no access. Members have voting rights, while Assignees have no voting rights. Members have full legal and economic rights, while Assignees only have the right to receive distributions.

**Section 5.06. Return of Contributions.** No Member, Transferee, Assignee, Charging Order Holder, or other Person has the right to require the return of any capital contribution; however, the Company may return all or any portion of a Member's capital contribution with the unanimous consent of the Manager if, after such distribution, all liabilities of the Company, including borrowing from Members could be paid.

## ARTICLE VI
## MANAGEMENT

**Section 6.01. Designation of Manager.** The Company shall be managed by a Manager. The initial Manager of the Company is/are the following individual(s) and/or entity(ies):

Garry H Powles


The term Manager is singular in this Agreement; however, the term encompasses all Managers, irrespective of whether there is one or more. A Manager need not be a Member.

A Manager shall be entitled to compensation for services rendered as agreed between the Manager and Members. A Manager may be removed by an Act of the Members holding a majority Membership Interest Percentage.

**Section 6.02. Death, Incapacity or Resignation of Manager.** A Manager may resign by providing written notice to the Member. The resignation takes effect 30 days after the date notice is delivered or a specified later date. In the event of the death or incapacity of a Manager, the remaining Manager or Managers, if any, shall continue serving.

**Section 6.03. Authority of Manager.** The Manager has sole authority to manage the Company and is authorized to make any contracts, enter into any transactions, and make and obtain any commitments on behalf of the Company to conduct or further the Company's business. If there are two or more Managers serving, the signature of one Manager binds the Company; however, Managers shall act by majority consent.

Notwithstanding the foregoing, the Manager may in its sole and absolute discretion appoint a nominee, agent, attorney, or other Person who is not a Member or Manager who, at the direction of the Manager, shall have the authority to make any contracts, enter into any transactions and make and obtain any commitments on behalf of the Company to conduct or further the Company's business. The Manager shall have power to enter into a nominee agreement with any such person, and such agreement may contain provisions indemnifying the nominee, except for his willful misconduct. Such nominee of the Manager shall sign any and all documents with the title of Manager.

**Section 6.04. Duties of Manager.** Each Manager must discharge his, her or its responsibilities in good faith, with the care of an ordinarily prudent person in a like position and in a manner reasonably believed to be in the best interests of the Company.

**Section 6.05. Indemnification and Hold Harmless of Manager.** The Manager shall not be liable, responsible, or accountable in damages or otherwise to any Member for any loss or damage incurred because of any act or omission performed or omitted by the Manager in good faith on behalf of the Company and in a manner reasonably believed by the Manager to be within the scope of the authority granted the Manager by this Agreement and in the best interests of the Company.

- *Gross Negligence or Willful Misconduct.* A Manager shall be personally liable, responsible and accountable to any Member if the Manager is guilty of fraud, intentional breach of this Agreement, gross negligence or willful misconduct regarding an act or omission.

- *Good Faith Acts or Omissions.* Any act or omission performed or omitted by a Manager on advice of counsel to the Company shall be conclusively deemed to have been performed or omitted in good faith.

- *No Personal Liability for Capital Contributions.* The Manager shall not be personally liable for the return of the capital contribution of any Member, or any portion thereof, it being expressly understood that any such return shall be made solely from Company assets.

- *Indemnity Provisions.* The Company shall indemnify, save, defend and hold the Manager harmless from and against any loss, expense, or damage suffered by the Manager resulting from any act or omission of the Manager relating to the Company; however, the Company shall not be required to indemnify the Manager for any loss, claim, expense, or damage incurred as a result of the willful misconduct, gross negligence or fraud of the Manager.

**Section 6.06. Appointment of Officers.** The Manager may unanimously appoint "*Officers*" to act on behalf of the Company. Officers shall have such powers as are specifically set forth in those resolutions creating a specific Officer position.

Each Officer shall serve at the pleasure of the Manager. The Manager may at any time (with or without cause) remove any Officer and fill any vacancy created by the death, disability, incapacity, removal, dissolution, termination, resignation or increase in the number of Officers.

## ARTICLE VII
## MEMBER MEETINGS

The Member may, but need not, meet as a Member for whatever purpose specified.

## ARTICLE VIII
## AMENDMENTS

The provisions of this Agreement may not be waived, altered, amended or repealed, in whole or in part, except by an Act of Members holding at least 75% of outstanding Membership Interest Percentage.

## ARTICLE IX
## REQUIRED RECORDS

**Section 9.01. Contents and Location of Required Records.** The Company shall maintain its Required Records at its principal place of business.

**Section 9.02. Maintenance of Particular Records.** The Company shall comply with the LLC Act; specifically, the Company shall maintain the records and information required by the Wyoming Secretary of State, including, without limitation, the following:

- Name, address, phone number and e-mail address of the Member or Member's authorized agent; and
- Capital Account for each Member, including all capital contributions, Membership Interest Percentage and transfers.

## ARTICLE X
## DISSOLUTION

The Company shall dissolve and wind up when the period fixed for duration expires; or on the written Act of the Members holding at least 75% of outstanding Membership Percentage.

As soon as possible following the occurrence of either of the foregoing, the Company shall execute a statement of intent to dissolve as prescribed by the Wyoming Secretary of State.

## ARTICLE XI
## MISCELLANEOUS

**Section 11.01. Governing Law.** This Agreement, and any question, dispute or other matter related to or arising under this Agreement, shall be governed by the laws of Wyoming.

**Section 11.02. Binding Effect.** This Agreement binds the Members and all successors and assigns.

**Section 11.03. Complete Agreement.** This Agreement, which term, as set forth in Article II, includes the articles of organization, each as amended from time to time, constitutes the complete and exclusive Agreement of the Member and supersedes all prior agreements, whether oral or written, with respect to the subject matter hereof and thereof.

**Section 11.04. Severability.** If any provision of this Agreement is held to be illegal, invalid or unenforceable:

- that provision shall be severed and this Agreement shall be construed and enforced as if the illegal, invalid or unenforceable provision had never been part;
- the remaining provisions of this Agreement shall remain in full force and shall not be affected by the illegal, invalid or unenforceable provision or by its severance; and
- in place of the illegal, invalid or unenforceable provision, there shall be added to this Agreement a legal, valid and enforceable provision as similar to the illegal, invalid or unenforceable provision as legally possible.

**Section 11.05. Notices.** A notice to be given or made to the Company or any Member must be in writing and shall be considered to have been given when delivered to the address specified in the Required Records. A person who wants to change an address in the Required Records may do so by giving written notice of the change to the Company. The change takes effect five days after notice is given.

**Section 11.06. Multiple Counterparts.** This Agreement may be executed in several counterparts, each of which shall be considered an original and all of which shall constitute one and the same document. Proving the execution and contents of this Agreement against a party may be done by producing any copy of this Agreement signed by that party.

**Section 11.07. Gender and Number.** As used in this Agreement, the masculine, feminine and neuter gender, and the singular or plural number shall be considered to include the others whenever the context indicates.

**ACCEPTED AND AGREED:** *Oakwood Addition LLC*

**BY MEMBER:**

Garry H Powles

**MANAGER:**

Garry H Powles                                    10-3-2022

                                                 Date

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| OAKWOOD ADDITION, LLC, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 2:26-CV-00119 |
| | § | |
| CITY OF GEORGE WEST, TEXAS, | § | |
| DEFENDANT. | § | |

## PLAINTIFF'S FIRST AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

**COMES NOW** Plaintiff Oakwood Addition, LLC ("**Oakwood**" or "**Plaintiff**") and files its First Amended Petition, respectfully showing the Court as follows:

### I. DISCOVERY LEVEL

1.　　Pursuant to Tex. R. Civ. P. 190.4, discovery in this case is intended to be conducted under Level 2 of this Rule.

### II. PARTIES & SERVICE

2.　　Plaintiff, Oakwood Addition, LLC ("**Oakwood**"), is a foreign Wyoming limited liability company not authorized to do business in Texas.

3.　　City of George West, Texas ("**Defendant**" or the "**City**") is an incorporated city in Live Oak County, who may be served with process by serving its City Manager, Darrell Pullin, at 406 Nueces St., George West, Texas 78022.

### III. JURISDICTION AND VENUE

4.　　This Court has jurisdiction pursuant to Chapter 245 of the Texas Local Government Code and because Plaintiff requests damages and remedies within the jurisdictional limits of the

Court. Plaintiff seeks monetary relief over $1,000,000.00 and non-monetary relief.

5.      Venue is proper in Live Oak County, Texas, pursuant to TEX. CIV. PRAC. & REM. CODE § 15.002 (a)(1) because all of substantial part of the events and omissions giving rise to these claims occurred in Live Oak County and pursuant to Chapter 245 of the Texas Local Government Code.

## IV. BACKGROUND AND FACTS

6.      By deed dated and recorded on or around November 10, 2022, Oakwood acquired fee simple title to the real property and improvements: (1) commonly known as Oakwood Addition, George West, Live Oak County, Texas; (2) Lots 1-38 and Lots 1-30, Block 1 and 2, Oakwood Addition all Blocks and Lots, 15.49 Acres Addition, City of George West, Live Oak County, Texas; and/or (3) the subject of that certain General Warranty Deed recorded as Instrument No. 239660 in the records of the Live Oak County, Texas Clerk (the "**Property**"). The Property is a 68-lot single-family residential subdivision.

7.      The Property was originally platted in 1980 and subsequently amended and approved by the City Council in 1983. The corrected plat was recorded on or about January 10, 1983, in the Plat Records of Live Oak County, Texas (the "**Plat**").1 Pursuant to Chapter 245 of the Texas Local Government Code, once a plat is approved, the project is vested under the ordinances, regulations, and requirements in effect at the time of approval. Accordingly, the Oakwood Addition subdivision constitutes a vested development under Texas law. Oakwood acquired the Property with the intent to continue development of the subdivision consistent with those vested rights in order to place the Property into its highest and best use. On or about May 2023, Oakwood

---

1 *See* Exhibit A (the "Plat").

submitted preliminary civil plans to the City seeking approval to proceed with development pursuant to the Plat.

8.      Thereafter, Oakwood began coordinating with the City and the City's contracted engineer regarding the development of the subdivision. Oakwood met with City representatives and provided the information requested by the City concerning the proposed development and the existing subdivision infrastructure so that the project could proceed consistent with the subdivision's vested rights. Oakwood made repeated efforts to obtain direction from the City regarding the requirements necessary for the project to proceed. Oakwood communicated with City staff through email, telephone calls, and in-person meetings seeking guidance on the development of the Property and confirmation that the subdivision would be allowed to proceed under the regulations in effect when the subdivision was approved. Despite these efforts, the City failed to provide clear direction regarding the requirements applicable to the development of the subdivision and repeatedly delayed providing meaningful responses.

9.      On February 20, 2024, Oakwood submitted a full and complete set of civil engineering plans for the development of the subdivision. Despite receiving those plans, the City did not provide substantive feedback for more than six months. Comments regarding the plans were not issued until October 31, 2024, and those comments were minor in nature. Oakwood corrected the comments and submitted revised plans on November 7, 2024. After Oakwood addressed the City's comments, the City's contracted engineer confirmed that the subdivision's water, wastewater, and street designs were acceptable, and that no further technical comments were required. On or about December 20, 2024, the City approved Oakwood's engineering plans without further objection.

10.     Despite approving the engineering plans, the City thereafter delayed and withheld the final approvals and municipal utility connections necessary for Oakwood to proceed with development of the subdivision for months. Moreover, the City refused to allow development of the subdivision to proceed unless Oakwood agreed to comply with newly and improperly asserted development requirements. Instead of allowing the project to proceed under the standards applicable at the time the subdivision was originally approved in 1983, the City began asserting new requirements and conditions, including modern fire flow standards and demands for off-site infrastructure improvements, that were adopted decades after the subdivision Plat was approved and that were not applicable to the subdivision when it was originally approved.

11.     As a result of the City's delays, the withholding of approvals, the refusal to provide municipal utility connections, and the attempt to impose retroactive development requirements, Oakwood has been unable to proceed with development of the subdivision despite having satisfied the engineering requirements necessary for the project to move forward. The City's actions have prevented Oakwood from developing the Property as contemplated and as lawfully permitted under the approved Plat and Oakwood's vested rights under Chapter 245 of the Texas Local Government Code and have significantly impaired the value and use of the Property. The City's actions have substantially interfered with Oakwood's reasonable investment-backed expectations and have significantly impaired Oakwood's ability to place the Property into its highest and best use.

## V.  CAUSES OF ACTION

12.     All conditions precedent to Oakwood's recovery have occurred or have been waived, excused, or otherwise satisfied.  All notices required have been provided, waived, excused, or otherwise satisfied.

13. Oakwood repeats and incorporates the allegations contained in paragraphs 1-11 herein for all purposes, including in support of each cause of action asserted.

**A. Violation of Chapter 245 of the Texas Local Government Code**

14. The City has violated Oakwood's vested development rights under Chapter 245 of the Texas Local Government Code. The Oakwood Addition subdivision constitutes a vested development project because the subdivision Plat was approved by the City in 1983 and duly recorded in the Plat Records of Live Oak County, Texas. Despite those vested rights, the City has attempted to improperly apply regulations and development requirements enacted decades after the subdivision's approval to Oakwood's development of the Property, including modern fire flow standards, off-site infrastructure requirements, and other development conditions that were not in effect at the time the subdivision Plat was approved and/or which had already been provided in the Plat.

15. Chapter 245 of the Texas Local Government Code provides that once a project is filed or approved, the project is entitled to proceed under the regulations, ordinances, and development standards in effect at the time the original permit for the project was filed and applies to all subsequent permits necessary for the completion of the project. *See* TEX. LOC. GOV'T CODE §245.002(b), *See also Sheffield Dev. Co., Inc. v. City of Glenn Heights,* 140 S.W.3d 660,671 (Tex. 2004). Under Chapter 245, a municipality may not retroactively apply subsequently adopted regulations to a previously approved development project. *See City of Lorena v. BMTP Holdings, L.P.,* 409 S.W.3d 634, 644 (Tex. 2013). Here, the Property subdivision Plat was approved and recorded in 1983, and Oakwood is continuing the project development initiated under the previously approved Plat. As such, Oakwood is therefore entitled to develop the Property under the ordinances, regulations, permits, services, requirements and associated vested rights that were

in effect at that time and that accompany the project. By attempting to impose development requirements enacted decades after the subdivision was approved, the City has unlawfully refused to recognize Oakwood's vested rights and interfered with Oakwood's vested development rights under Chapter 245.

16.     The City's actions have prevented Oakwood from proceeding with development of the Property as approved and as protected under Chapter 245 of the Texas Local Government Code. Oakwood therefore seeks declaratory and injunctive relief establishing that the Oakwood Addition subdivision is a vested project under Chapter 245 of the Texas Local Government Code and that the City must allow development of the Property under the ordinances, regulations, and requirements that were in effect when the subdivision was originally approved, together with all other relief to which Oakwood may be entitled at law or in equity.

## B.  Inverse Condemnation

17.     The City has engaged in an unconstitutional inverse condemnation of Oakwood's property rights, in that: (1) the City's actions are not a permissible exercise of its police powers and instead constitute an unlawful regulatory taking; and (2) the City's conduct (a) does not substantially advance and is not rationally related to any legitimate governmental interest, (b) has a severe economic impact upon Oakwood, (c) interferes with Oakwood's distinct investment-backed expectations, and (d) is arbitrary and unreasonable. As a result, the City's conduct constitutes a compensable taking and damaging of Oakwood's Property under Article I, Section 17 of the Texas Constitution, and applicable Texas law.

18.     The species of inverse condemnation at issue is known as a regulatory taking, which Texas law recognizes when a government entity, acting under the guise of its regulatory authority, imposes restrictions that unreasonably interfere with a property owners right to use and develop

its property and instead operate to deprive the owner of the economically viable use of that property. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 929 (Tex. 1998). A regulatory taking may occur where governmental action has a severe economic impact on the property owner or substantially interferes with the owner's distinct investment-backed expectations. *See Sheffield Dev. Co., Inc. v. City of Glenn Heights,* 140 S.W.3d 660,671 (Tex. 2004). A regulatory taking may also occur when a municipality interferes with the owners right to use and enjoy its property by imposing regulations against a previously approved development under vested right protection. *See City of Lorena v. BMTP Holdings, L.P.*, 409 S.W.3d 634, 644 (Tex. 2013). Here, the City has done precisely that with respect to the Oakwood Addition subdivision. By refusing to recognize Oakwood's vested development rights, withholding approvals, and conditioning the provision of necessary utility services upon compliance with regulations enacted long after the subdivision was approved, the City has effectively prevented Oakwood from developing the Property as lawfully permitted. The City's actions therefore constitute a regulatory taking and inverse condemnation under Texas law.

19. As a direct and proximate result of the City's actions, Oakwood has been deprived of the economically viable use of the Property and has suffered substantial damages, including delay damages, lost development opportunities, and diminution in the value of the Property. Oakwood is therefore entitled to just compensation in an amount equal to the value the Property would have had absent the City's interference, together with all other damages allowed by law.

20. The City has no immunity for violations of the Texas constitution. *See, e.g., City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995). Therefore, the trial court has jurisdiction over these claims. Plaintiff seeks recovery of actual damages, attorney fees, court costs, and pre- and post-judgment interest.

## VI. Prayer

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff requests that the Court enter a judgment awarding Plaintiff all relief requested herein or available under these facts as well as all such other and further relief, both general and special, at law or in equity, to which it may be entitled, including but not limited to costs, attorney fees, and interest.

Respectfully submitted,

**PATEL GAINES, PLLC**
2030 N Loop 1604 W, Suite 200
San Antonio, Texas 78248
www.patelgaines.com
(210) 460-7787 | Telephone
(210) 460-7797 | Facsimile

By:  */s/ Grant M. Gaines*
     Grant M. Gaines
     Texas State Bar No. 24074241
     ggaines@patelgaines.com

**ATTORNEY FOR PLAINTIFF**

# EXHIBIT A

